UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

VINCENT LONGOBARDI,                                    CIVIL CASE NO: 21-CV-2705

                                    Plaintiff,

            - against -                                **COMPLAINT**

CITY OF NEW YORK, JAMES O'NEILL, in his                Jury Trial Demanded
official capacity as Police Commissioner of the New
York City Police Department; HEATHER JONAS,
individually and in her official capacity as former a
director of the New York City Police Department's
Psychological Services Unit;
SHENG-MEI CHIU-PALMER, individually and in
her official capacity as a former New York City Police
Department psychologist; MICHAEL BARRETO, in
His official capacity as former Commanding Officer
of the New York City Police Department License
Division; VINCENT SAPIENZA, in his official
capacity as Commissioner of the New York City
Department of Environmental Protection.
                                    Defendants.
-----------------------------------------------------------------x

        Plaintiff, Vincent Longobardi ("Longobardi" or "Plaintiff") by his attorney, Joseph W.

Murray, Esq., alleges against all defendants as follows:

## PRELIMINARY STATEMENT

        1.      This is a civil rights action to redress the violation of Plaintiffs' rights secured

by 42 U.S.C. § 1983, 1985, 1986, and 1988 (2018), First, Second, and Fourteenth

Amendments to the United States Constitution, in which the defendants acted under color of

law to deprive Plaintiff of his Constitutional rights, including through an inter-agency

1

conspiracy between the New York City Police Department ("NYPD") and the New York City

Department of Environmental Protection ("DEP"), and through official policies, customs and

practices of the NYPD and DEP to deprive Plaintiff of employment with the NYPD and DEP

and to maliciously retaliate against Plaintiff for engaging in protected speech through petitioning

the NYPD seeking redress of grievances in the appeal process and employment applicant

process, and retaliation against Plaintiff by temporarily denying Plaintiff's right to own a firearm

pursuant to Plaintiff's Second Amendment right.

      2.     This case exposes public officials within the NYPD who have engaged in

egregious acts of abuse of power, exercising their personal animus against Plaintiff, including,

but not limited to, engaging in conduct denying Plaintiff his constitutional rights to due process

of law, the equal protection of law, retaliation of Plaintiff for his lawful exercise of protected

speech, and attempts to deny Plaintiff the right to own a firearm and attain employment as a DEP

police officer because of personal animus. These public officials also engaged in an inter-agency

conspiracy to deprive Plaintiff of his constitutional rights, while others failed to intercede on

Plaintiff's behalf.

      3.     Defendant Inspector Michael Barretto ("Barreto"), as the Commanding Office of

the NYPD License Division instituted an unconstitutional official department policy and/or

protocol that any applicant for a gun license who has purportedly failed a psychological

assessment test to become a police officer should be denied a pistol permit, *per se*, without

inquiry to what the underlying criteria was for the applicant's purported failure of the psychological assessment test.

4.     Defendants Heather Jonas, PhD, and Sheng-Mei Chiu-Palmer the only defendants sued here individually and in their official capacities as public servants, both having conspired together and acting individually, engaged in egregious criminal conduct constituting Official Misconduct, under New York State Penal Law § 195.00, which was clearly outside of the scope of their employment, for which they should be denied indemnification by the tax payers of the City of New York.

5.     Finally, these defendants conspired to deny, and did deny plaintiff, as a "class of one," (former pistol license holder and police officer candidate who purportedly previously failed the NYPD and DEP psychological assessment test) the equal protection of law in Plaintiff's pursuit to reacquire a pistol license, by subjecting Plaintiff to an unconstitutional rule or policy that other pistol license applicants were not subjected to.

**JURY TRIAL DEMAND**

6.     Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

**JURISDICTION AND VENUE**

7.     Jurisdiction is founded upon 28 U.S.C. § 1331 in that Plaintiff alleges claims which arise under the laws of the United States 42 U.S.C. 1983; 28 U.S.C. § 1343(1) in that Plaintiff seeks to recover damages from the deprivation of Plaintiff's civil rights in the

3

furtherance of defendants' conspiracy pursuant to 42 U.S.C. § 1985(3); 28 U.S.C. § 1343(2) in that Plaintiff seeks to recover damages from defendants who failed to prevent or failed to aid in preventing damages caused by defendants conspiracy pursuant to 42 U.S.C. § 1985(3), 42 U.S.C. 1986 that defendants had knowledge of and the power to prevent; 28 U.S.C. § 1343(3) in that Plaintiff seeks to recover damages from defendants to redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; 28 U.S.C. § 1367 supplemental jurisdiction of the court for pendant state claims.

8.    Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred there.

## PARTIES

9.    Plaintiff, VINCENT LONGOBARDI, ("Plaintiff" or "Longobardi"), is a white, male, applicant for employment in the New York City Department of Environmental Protection for the Civil Service title of "Police Officer," and is a resident of Kings County, State of New York, and United States Citizen.

10.    Defendant, CITY OF NEW YORK ("City"), is and was at all times relevant hereto, a municipal corporation duly organized and existing under the laws of the State of

New York, exercising governmental authority and was all relevant times the employer of all defendants.

11.    Defendant, JAMES O'NEILL ("Commissioner O'Neill"), sued here in his official capacity as former Police Commissioner of the New York City Police Department ("NYPD"), is the CEO of the NYPD with final decision-making authority and oversight over the NYPD, with authority to establish policy, procedures, and protocols within the NYPD.

12.    Defendant, HEATHER JONAS  ("Director Jonas"), sued here individually and in her official capacity, is the former Director of the NYPD Psychological Services Unit, was at all relevant times an employee of the NYPD as a psychologist and Director of the NYPD Psychological Services Unit, with final decision-making authority and oversight over the NYPD Psychological Services Unit, and with authority to establish policy, procedures, and protocols regarding applicant screening within the NYPD Psychological Services Unit.

13.    Defendant, SHENG-MEI CHIU-PALMER ("Dr. Palmer") sued here individually and in her official capacity as a former NYPD psychologist, was at relevant times assigned to Plaintiff's employment screening.

14.    Defendant, MICHAEL BARRETO ("Barreto"), sued here in his official capacity as Commanding Officer of the NYPD License Division, with authority to establish policy, procedures, and protocols for the NYPD License Division, and at relevant times reviewed Plaintiff's firearms application license.

5

15.     Defendant, MICHAEL SAPIENZA ("Sapienza"), sued here in his official capacity as Commissioner of New York City Department of Environmental Protection ("DEP"), is the CEO of the DEP with final decision-making authority and oversight over the DEP, with authority to establish policy, procedures, and protocols within the DEP.

## RELEVANT NON-PARTIES

16.     NYPD Police Officer Andrew Stack ("Stack") who was assigned as Longobardi's investigator.

17.     Mr. Herb Roth ("Roth") Deputy Director of Human Resources Management at DEP.

18.     Dr. Gregory Mack PhD ("Mack"), is a retired NYPD Detective who previous worked within the NYPD Psychological Assessment Services performing applicant psychological screenings. Upon retiring her opened up his private practice, including, among other things, providing expert review of police applicant disqualifications.

19.     NYPD attorney David Goldfarb ("Goldfarb") Managing Attorney, NYPD Legal Bureau, Civil Section.

## STATEMENT OF FACTS[1]

---

[1] This "statement of Facts" is not intended to be a complete statement of every single event that took place and every single communication that took place in the course of events leading to this litigation. It is meant to be a depiction of facts sufficient to provide defendants with notice of the events and causes of action in which we are seeking relief from.

20.     Plaintiff, Longobardi is the son of a former NYPD officer and has long sought to follow in his father's footsteps by becoming a police officer himself.

21.     Longobardi has taken several civil service exams in his endeavors to follow his dream, including, twice with the NYPD and twice with the DEP seeking employment in the civil service title of Police Officer with the NYPD and Environmental Police Officer with DEP.

**Timeline of Longobardi applicant processing for DEP Police Officer Exam 4304**

22.     The exam that is the subject of this litigation is Civil Service Exam for DEP Environmental Police Officer No. 4304, which Longobardi took in December of 2013 and received a score of 97.647 and a list number of 7. (See Email exchange of 1/24/2020 and 1/28/2020 between Longobardi and Alan Deutsch from Department of Citywide Administrative Services ("DCAS"), pursuant to a FOIL request annexed hereto as **Exhibit-1**).

23.     In August of 2014, Longobardi was called for the DEP medical testing.[2]

24.     On August 26, 2014, Longobardi sent an introductory email to NYPD Police Officer Andrew Stack ("Stack") who was assigned as Longobardi's investigator and began the background investigation process.

25.     In and around August/September of 2014, Longobardi completed the written and oral psychological exams with Dr. Palmer, as well as the job Standard Test.

----

[2] Although Longobardi was applying for the civil service position of DEP Environmental Police Officer, the NYPD does all of the applicant screening and medical and psychological testing for DEP, but are in communication with DEP of the applicant's status.

26.     Throughout September and October of 2014, Longobardi continued to cooperate fully with the investigation, including the unusual request from Stack that "they are requesting statements from you [Longobardi] in regard to every police report you have made" which Longobardi then completed and submitted to Stack.

27.     Prior to taking the DEP Exam 4304 Longobardi was a restricted handgun license holder, (commonly known as a premise permit) for his residence, duly issued by the NYPD License Division on February 26, 2011.

28.     Consistent with his restricted handgun license, Longobardi legally owned a Beretta 9mm, Model: PX4, semiautomatic handgun.

29.     In addition to his restricted handgun license, Longobardi was also a duly authorized New York City Rifle & Shotgun Permit holder, the relevant permit was issued on July 15, 2013.

30.     By email dated October 22, 2014, Stack confirmed that he received the files requested from Longobardi and asked when Longobardi would be vouchering his pistol license and firearms.

31.     October 27, 2014, Longobardi surrendered his permits and vouchered his firearm in anticipation of entering the police academy, on NYPD Property Clerk's Invoice No. 3000444754, at the 63 Precinct, which reads in the remarks section: "SAID FIREARM IS INVOICED FOR SAFEKEEPING FOR SAID OWNER WHILE HE ATTENDS THE POLICE ACADEMY FOR HIS POSITION FOR DEP POLICE."

8

32.     Longobardi provided copies of the voucher and other requested items to Stack with the understanding that Longobardi had passed the background investigation and was ready to enter the police academy.

33.     Longobardi's last email communication from Stack was on November 25, 2014 in response to two questions Longobardi asked about the date of the next DEP police academy class and whether Longobardi would hear from Stack again, to which Stack responded, "DEP will contact you. I do not know when the class will be."

34.     In or around March of 2015, Longobardi was called for the mini-medical and was informed that the mini-medical was the last step before candidates are notified to enter the academy.[3]

35.     Obviously, Longobardi had completed all testing and background investigation that had been required of him; he even vouchered his pistol license and firearms, in anticipation of entering the police academy, and was instructed to await contact directly from DEP for the police academy class that was soon to begin.

36.     Longobardi was extremely excited and anxiously awaited being called for the upcoming March-2015 class.

---

[3] Typically police academy classes for DEP Police begin sometime in March.

37.     Longobardi was not called for the March-2015 class, so he applied for the return of his pistol license, rifle & shotgun permit and his 9mm weapon, which was egregiously delayed without any reasonable explanation.

38.     On or about February 3, 2016, Longobardi received an email indicating that in order to be considered for the DEP Police he needed to retake the Job Standard Test.

39.     On or about March 1, 2016, Longobardi retook the Job Standard Test.

40.     On or about March 2, 2016, Longobardi took the mini-medical and was again informed that the class will be called in the next few weeks.

41.     Longobardi was again very excited that his dream of becoming a police officer was just within reach, while he again waited anxiously to be called for the March-2016 class.

42.     However, Longobardi was again not called to enter the academy and was still awaiting the return of his weapon and approval of his pistol permit and rifle & shotgun permit.

43.     Thereafter, Longobardi received a Notice of Disapproval (Disapproval No. 206/2016), dated October 19, 2016, from the NYPD License Division, signed by defendant, Inspector Michael Barreto as Commanding Officer, indicating in relevant part, "YOU HAVE FAILED THE NYPD PSYCHOLOGICAL ASSESSMENT TEST TO BECOME A POLICE OFFICER" and "YOU HAVE ALSO FAILED THE DEP PSYCHOLOGICAL ASSESSMENT TEST TO BECOME A POLICE OFFICER" […] which cast grave doubt upon your moral character and fitness to possess a Premise Residence License…"

10

44.    It should be noted that the NYPD License Division has been riddled with allegations of corruption and bribery for several years, including a major scandal that broke later that year in 2016, in which officials were essentially selling and expediting pistol licenses. *See*, Kaja Whitehouse, "Ex-Cop: NYPD gun license division was a bribery machine," NEW YORK POST, April 17, 2018, 8:31 pm updated, https://nypost.com/2018/04/17/ex-cop-nypd-gun-license-division-was-a-bribery-machine/

45.    Why couldn't Longobardi, a former pistol permit holder and rifle & shotgun permit holder get approved for a permit that he previously surrendered because he was anticipating entering the police academy, while the NYPD is giving away pistol permits essentially to anyone with money?

46.    In an effort to restore integrity to the NYPD License Division, then NYPD Police Commissioner Bratton assigned the task to Inspector Terence Moore, a 31-year veteran who transferred in from the Internal Affairs Bureau.

47.    Just days (approximately two weeks) after then Commissioner Bratton appointed Inspector Moore to head the "scandal-scarred" NYPD License Division, Inspector Moore abruptly quit the force, on short notice, citing undisclosed personal reasons. Murray Weiss, "New Boss of NYPD's Scandal-Scarred License Division Suddenly Quits," DNA INFO, May 17, 2016, 2:03 pm, https://www.dnainfo.com/new-york/20160517/civic-center/new-head-of-nypds-scandal-scarred-license-division-suddenly-quits/

11

48.     Approximately one-week later defendant, Inspector Michael Barreto, who was the commanding officer of the ***NYPD Applicant Processing Division***, was assigned as the new commanding officer of the ***NYPD License Division***.[4] Rocco Parascandola, "EXCLUSIVE: New boss of embattled NYPD gun-licensing unit was once stabbed at precinct by lunatic," https://www.nydailynews.com/new-york/new-boss-nypd-gun-licensing-unit-stabbed-lunatic-article-1.2650914

49.     After assuming command Barreto immediately initiated new rules and policies pertaining to how licenses would be issued, including a couple that were clearly unconstitutional, arbitrary, and capricious and unrelated to the existing statutory-regulatory scheme.

50.     One such policy was reported in the news by a former employee, "[Barreto] is making his own rules. He's making his own laws and the higher-ups are just letting him because they feel it's better than our previous bad press." Kerry Picket, "Former NYPD Employee Says Gun Licensing Division Denies Permits Based on Minor Traffic Violations," DAILY CALLER, August 29, 2018, 1:58 pm ET, https://dailycaller.com/2018/08/29/nypd-employee-gun-licensing-permits/

51.     Included among the new policies implemented by Barreto (the former commanding officer of the NYPD Applicant Processing Division) was an unconstitutional official department policy and/or protocol that any applicant for a gun license who has

---

[4] Your undersigned is a retired NYPD police officer who briefly served together with then Sergeant Michael Barreto at the 115th Precinct in Jackson Heights, Queens, (approximately 1998-2000) and found him to be a hard-working and capable supervisor.

purportedly failed a psychological assessment test to become a police officer should be denied a pistol permit, *per se*, without inquiry into what the underlying criteria was for the applicant's purported failure of the psychological assessment test.

52.    By letter dated November 16, 2016, your undersigned informed the NYPD License division that I represented Longobardi in appealing the disapproval of Longobardi's pistol License and requested (1) clarification as to the basis of the disapproval; (2) a 90-day extension of the deadline to file our submission in support of Longobardi's appeal; and (3) copies of all records within their files considered by the agency in reaching its decision.

53.    Longobardi made two requests for records pursuant to New York State's Freedom of Information Law ("FOIL"), in order to review those prior findings of Longobardi's disqualification for employment as an NYPD and DEP police officer.

54.    These FOIL request and the subsequent appeals were wrongfully denied, obviously in the furtherance of concealing the unconstitutional denial of Longobardi's permit.

55.    On April 27, 2017, Director Jonas from NYPD Psychological Services returned Longobardi's prior phone call to her about his letter and HIPAA request for NYPD Licensing Division.

56.    Director Jonas claimed that they never received Longobardi's request, despite it being sent via certified mail.

13

57.     No documents were provided pursuant to your undersigned's letter request, nor were any documents provided to Longobardi pursuant to his FOIL requests, nor from his direct appeal to Director Jonas for records.

58.     This was clearly done to further frustrate Longobardi from both being employed as a DEP Environmental Police Officer and being approved for his firearms licenses, by denying Longobardi procedural and substantive due process of law in refusing to provide Longobardi with the requested files necessary to effectively appeal the denial of his permit.

59.     During that April 27, 2017 call, Director Jonas informed Longobardi for the first time, that he was under investigative review for DEP Police.

60.     Obviously then, it would logically follow that no final determination had yet been made on Longobardi's application for employment as an Environmental Police Officer, pursuant to Exam 4304, and that Longobardi was still on the eligible list.

61.     However, it should be noted that DCAS informed Longobardi via email that,

> In a certification disposition dated March 27, 2015, DEP reported that it took no action pending a psychological review.
>
> In a certification disposition dated July 25, 2016, DEP reported that you failed to report for a psychological review (FTR).
>
> Following the FTR, you were removed from the eligible list. *Id.* at **Exhibit-1**.

62.     Again, the April 27, 2017 call with Director Jonas was the first time that Longobardi was informed that he was under investigative review, which hardly seems possible

14

by the official DCAS record which indicates that Longobardi was on ***psychological review*** on March 27, 2015 and was removed from the eligible list on July 25, 2016, and that there is no record of Longobardi ever being on investigative review. *See*, **Exhibit-1**.

63.     Clearly, this evinces a gross deprivation of Longobardi's due process rights by defendants in that Longobardi was never notified that he was on investigative review, nor was Longobardi ever afforded the opportunity to appeal the purported investigative review and psychological review.

64.     The fact is that Director Jonas instituted her own unconstitutional rule or policy, as Director of the NYPD Psychological Assessment Unit to automatically deny, *per se,* any applicant who had previously failed the psychological assessment test during a prior application, without providing the applicant an objective *de novo* assessment for the new application.

65.     This policy deprived Longobardi of his constitutional rights to procedural and substantive due process of law, as well as the equal protection of law, guaranteed by the Fourteenth Amendment to the United States Constitution.

66.     Upon information and belief, Director Jonas conspired with members of the DEP, including defendant Vincent Sapienza, to deny Longobardi employment with the DEP.

67.     This inter-agency conspiracy included the denial of Longobardi's procedural and substantive due process rights in denying his prior FOIL requests and requests for information, necessary to review his applicant status of psychological and investigative review, which must go through Director Jonas for final approval.

68.     This inter-agency conspiracy was also to deny and did deny Longobardi the equal protection of law by unconstitutionally discriminating against Longobardi (as a class of one) for having previously been a pistol license holder and having purportedly failed the psychological assessment test in prior civil service police officer applications, *per se* denying him employment, without providing Longobardi a *de novo* review that all first-time applicants enjoyed.

69.     This denial of procedural and substantive due process and equal protection of law also resulted in Longobardi being denied the reissuance of Longobardi's pistol license and use of his firearm from approximately October 27, 2014 when Longobardi surrendered his license and vouchered his firearms in anticipation of entering the police academy, through approximately July 28, 2017, when the administrative appeal of the denial of Longobardi's application for a pistol license was granted.

70.     In addition to the nearly three year delay of reissuing Longobardi's pistol license and rifle & shotgun permit, Longobardi had to hire your undersigned to assist him in expediting the processing of his application for his permits and then appealing the denial of his application for a permit.

71.     Also, during that April 27, 2017 call with Director Jonas, Longobardi informed Director Jonas that he hired an attorney to represent him and Dr. Gregory Mack to review his applicant file and that Longobardi was also represented by counsel regarding Longobardi's pistol permit appeal.

72.     By email to Rebecca Conrad, a paralegal at your undersigned's firm, dated May 15, 2017, Jonathan David, Director of the NYPD License Division advised that "matters related to the pending administrative appeal of the denial of Vincent Longobardi's gun license application are currently being reviewed."

73.     What was later learned by Longobardi is that Director Jonas, Dr. Palmer and Barreto were also engaged in a conspiracy to deny Longobardi his constitutional rights to procedural and substantive due process, the equal protection of law, to wrongfully deny him employment, retaliate against him for engaging in protected speech as a whistleblower in petitioning the government for a redress of grievances, as well as the denial of his Second Amendment rights to bear arms.

74.     On or about May 30, 2017, long after the official DCAS record reflects that Longboard was removed from the eligible list, Police Administrative Aid ("PAA") Delores Dandrige from the NYPD Psychological Assessment Section, called Longobardi and instructed him to call her back at this number, (718) 312-4407, to schedule a written and oral psychological examination for employment for the DEP position.

75.     On May 31, 2017, Longobardi received a second voicemail from PAA Dandridge essentially repeating her prior voicemail message from the day before.

76.     Longobardi called and was scheduled to immediately come in to retake the oral and written psychological exam on June 6, 2017.

77.     On June 6, 2017, Longobardi completed a written and oral psychological exam.

78.     Curiously, Longobardi was the only candidate for the DEP Police who was scheduled to take the exam that day.

79.     Moreover, the proctor for the written exam was confused as to why Longobardi was the only DEP Police candidate taking the exam and the first ever DEP Police candidate to take the psychological assessment testing at this new location, when no DEP police academy class was yet planned.

80.     Longobardi also met with Dr. Palmer for the oral psychological examination on June 6, 2017.

81.     As soon as Longobardi sat down, Dr. Palmer told Longobardi that she needs to go over some preliminary information first before she tells him why he is there.

82.     Longobardi responded to Dr. Palmer that he was told that he needed to retake the psychological exam in consideration for his employment with DEP Police, since his previous psychological exam was expired.

83.     Dr. Palmer then informed Longobardi that he was brought in because he applied for a pistol permit.

84.     It is beyond the pale and unconscionable, for Director Jonas and Dr. Palmer to have called Longobardi in, under the guise of his being psychologically evaluated for employment as a DEP Environmental Police Officer, when they already knew that they had denied Longobardi's application for employment on Exam 4304 on July 25, 2016, under the false pretense that Longobardi failed to report for an evaluation. *See* **Exhibit-1**.

18

85.    Dr. Palmer's statement confirmed that Longobardi was not under consideration for employment as a DEP Environmental Police Officer, rather, that this psychological screening was the pretext used pursuant to the conspiracy between Director Jonas, Dr. Palmer and Barreto to obtain information necessary to justify the denial of Longobardi's pistol permit which Barreto had already denied pursuant to his new, *per se* rule, based solely on the purported failure of the psychological assessment test to become a police officer, without a de novo review of the underlying reasons for his purported failure of the psychological assessment .

86.    Barreto knew from your undersigned's letter dated November 16, 2016, (see ¶ 52 supra) that we requested copies of all records within their files considered by the agency in reaching its decision.

87.    Since Barreto had denied Longobardi's application for a pistol permit pursuant to his unconstitutional, *per se* rule, Barreto had no documents within his file that reflect Longobardi's purported failure of the NYPD and DEP psychological assessment tests or the underlying reasons and he conspired with Director Jonas and Dr. Palmer to obtain some criteria.

88.    Palmer then began interrogating Longobardi through a barrage of questions regarding Longobardi's pistol license application, including, but not limited to her demanding to know how many guns Longobardi owned, why he wanted a gun, how many guns he has access to, etc.

89.     Dr. Palmer also wanted to know how it could have been possible for Longobardi to have already owned a gun since he was previously "disqualified" for an NYPD Police Officer position.

90.     Dr. Palmer began to lecture Longobardi why he did not need to own a gun, that he could rent a gun when he wanted to target shoot.

91.     Dr. Palmer made clear her personal aversion to firearms and her personal bias against Longobardi as a prior licensee and gun owner.

92.     Obviously by Director Jonas and Dr. Palmer engaging in this gross abuse of authority, by ordering Longobardi in to interrogate him as to his firearm and gun permits, under the false pretense that Longobardi was being evaluated for employment with DEP, was extremely outrageous conduct that shocks the conscious.

93.     In learning during the interrogation of Dr. Palmer's aversion to firearms and her objection to Longobardi being a gun licensee even after purportedly failing the psychological assessment to be a police officer, it became clear that Dr. Palmer was using her position of public trust, not to evaluate Longobardi for his fitness to be a police officer, rather she used her position of public trust, as a bogus pretext, to gain information that she could use to try to impose her personal anti-gun and anti-Longobardi opinions in the hopes of providing Barreto information to substantiate his denial of Longobardi's pistol permit.

94.     While Director Jonas and Dr. Palmer were acting under color of law when they arranged for Longobardi to come in under the bogus pretext that he was being evaluated for

employment as a DEP police officer, they were clearly doing so to impose their personal views and further their own personal anti-gun and anti-Longobardi agenda.

95.     Moreover, Director Jonas and Dr. Palmer engaged in this conduct with complete disregard to the unnecessary emotional distress that their egregious conduct was causing to Longobardi, not to mention the uncertainty of his employment goals, the disruption to his personal and family relationships, and his life plans, that their sick games were having on Longobardi.

96.     Dr. Palmer also revealed to Longobardi, albeit disingenuously, that she was originally going to pass him for the psychological assessment, but that Longobardi was now placed on psychological review for allegedly failing to disclose something.

97.     Longobardi informed Dr. Palmer that this was the first time that he was informed of having failed to disclose something.

98.     This was surely a pretextual reason that they just came up with to justify closing his case, to Longobardi, after achieving their goal of interrogating him pursuant to their conspiracy to deny Longobardi a pistol license.

99.     Dr. Palmer informed Longobardi that there was an "issue" with Touro Law School that they received a one sentence letter from Touro Law School that indicated that there was an issue, but Touro cannot disclose it to the police department.

100.     Dr. Palmer began to interrogate Longobardi about his failure to disclose this information from Toro Law School.

21

101.    Again, this June 6, 2017, meeting with Dr. Palmer was the first time that Longobardi heard of this issue with Touro Law School, which was nearly a year after the DCAS record indicates that Longobardi was removed from the eligible list. *See* **Exhibit-1**.

102.    Dr. Palmer also interrogated Longobardi about his employment with a solo practitioner attorney and demanded that Longobardi provide employment records from him.

103.    When Longobardi stated that there are no records, Dr. Palmer demanded that Longobardi get a letter from his employer stating that he never attacked anyone, he never got into confrontations, or assaulted anyone.

104.    Thereafter, Dr. Palmer then requested numerous documents from Longobardi, allegedly in order to complete his psychological evaluation and stated that they had to be submitted in about 10 days, again, despite the fact that DCAS has confirmed in writing that Longobardi was removed from the eligible list almost a year earlier.

105.    Dr. Palmer further stated that Longobardi should get those documents to her sooner so that Dr. Palmer could make a decision on what to tell the License Division, as to whether or not Longobardi's pistol license application should be approved or denied.

106.    It should be noted that the NYPD is performing the background investigation and applicant screening for DEP and continually updated DEP on the status of the applicants. As such, DEP knew or reasonably should have known what the defendants were doing, especially that the official DCAS record indicates that July 25, 2016, Longobardi was removed from the eligible list. *See*, **Exhibit-1**

22

107.    This, too, confirms the conspiracy between Director Jonas, Dr. Palmer, Barreto, and Sapienza and/or other DEP personnel to deny Longobardi his pistol permit and employment with DEP.

108.    Dr. Palmer warned Longobardi that if he did not immediately send the requested documents that his application would be discontinued.

109.    On June 16, 2017, Longobardi received another email from Palmer demanding that he release further information to Palmer, in that he still hadn't sent the other material that Dr. Palmer originally requested.

110.    On July 6, 2017, after learning about this bizarre, unethical, if not illegal behavior of Dr. Palmer and her apparent conspiracy with members of the NYPD License Division to wrongfully deny Longobardi employment as an Environmental Police Officer with the DEP and to wrongfully deny Longobardi a pistol license and riffle shotgun license I sent a spirited letter to Dr. Palmer and the NYPD License Division withdrawing Longobardi's application for DEP Police "under protest" due to the unethical and illegal conduct of Dr. Palmer and members of the NYPD License Division.  See July 6, 2017 letter to Dr. Palmer and NYPD License Division annexed hereto as **Exhibit-2**.

111.    Longobardi's administrative appeal of his denial of his pistol license was then immediately granted by letter dated July 28, 2017.

112.    On August 14, 2017, I sent a follow-up letter to Director Jonas, via email, recapping the events leading up to that point and requesting the current status of Longobardi's

application for DEP Police Exam: 4307, List No: 7 and to seek a good faith effort to try to

remedy the problems created by Dr. Palmer, so that my client can be hired as a police officer.

113.    On August 14, 2017, I received an email from attorney David Goldfarb, the

Managing Attorney, Legal Bureau, Civil Section, of the NYPD indicating that he represented

Director Jonas and the NYPD and that all future correspondence should be directed to him. See

August 14, 2017 letter to Director Jonas annexed hereto as **Exhibit-3**.

114.    In a related telephone conversation, Goldfarb confirmed that Dr. Palmer was no

longer working for the NYPD.

115.    Longobardi was contacted directly by the Internal Affairs Bureau about our July

6, 2017 letter confirming their receipt of the letter and that they were investigating our

complaints therein.

116.    Upon information and belief, Longobardi was further retaliated for his exercise of

protected free speech as a whistleblower and for seeking redress of grievances about this

governmental process and state actors through our July 6, 2017 letter.

117.    After further communications requesting the status of my client's pending

application for employment with the DEP Police, Goldfarb emailed me on November 26, 2017,

that I should receive a call from Director Jonas the following Monday (November 27, 2017).

118.    On March 13, 2018, I emailed Goldfarb indicating that I still had not been

contacted by Director Jonas and expressed a desire to negotiate a resolution about sealed records

that the NYPD somehow illegally obtained from Touro Law Center.

24

119.    On March 13, 2018, Goldfarb responded that it was represented to him that the NYPD had finished its review of Longobardi's application and furnished same to DEP. This turned out to be false.

120.    Goldfarb further indicated that as DEP was the hiring agency that they were responsible for any further transactions. This turned out to be false.

121.    Goldfarb recommended that your undersigned contact Herb Roth at DEP Legal for a status update and Goldfarb also provided a telephone number where Roth could be reached.

122.    This is also another important link that evinces the defendant's conspiracy to deny Longobardi employment as a DEP police officer.

123.    On March 26, 2018, after contacting DEP at the telephone number provided by Goldfarb, I was advised that contrary to what Goldfarb informed me of, that NYPD does the applicant investigations and then NYPD sends out the declination letters.

124.    On March 27, 2018, I sent an email to both Goldfarb and Roth requesting clarification of the status of Longobardi's application for DEP Police Officer and if his application was denied, who would be sending the declination letter out.

125.    Through further email communication on March 28, 2018, Roth confirmed that Longobardi was still on the Environmental Police Officer ("EPO") Exam 4304 list which Roth confirmed was active and viable. This turned out to be false.

126.    This contradicts the official DCAS response that Longobardi was removed from the eligible list after his alleged failure to report for a psychological review on July 25, 2016.

127.    Roth was employed by DEP in their legal department and owed a duty to Longobardi to intercede in the obvious conspiracy to deny Longobardi his constitutional rights to due process and equal protection of the law, but failed to intercede either intentionally or negligently, pursuant to 42 U.S.C. 1986.

128.    On March 28, 2018, Roth emailed your undersigned indicating that when NYPD Disqualifies an EPO candidate the NYPD will send Roth the folder and Roth will send out the notice of proposed disqualification letter with instructions on how to appeal. We never received a proposed disqualification letter.

129.    This further supports Roth and DEP's oversight, knowledge either actual of constructive knowledge of the unconstitutional and conspirator conduct that was taking place in Longobardi's case, requiring Roth or other DEP officials to intercede to prevent or correct the wrong that was being done to Longobardi.

130.    On March 29, 2018, your undersigned forwarded the email correspondence to Goldfarb and requested Director Jonas contact your undersigned regarding Longobardi's case.

131.    On March 31, 2018 having failed to respond to your undersigned's prior email, I emailed Goldfarb again requesting status clarification.

132.    On April 5, 2018, Roth emailed your undersigned indicating that the NYPD had discontinued Longobardi's psychological evaluation, but interestingly, he did not indicate the date of the NYPD had discontinued Longobardi's psychological evaluation (approximately July 25, 2016), to help conceal the false and misleading information that NYPD attorney Goldfarb

had been providing your undersigned with, in a conscious effort to help conceal their conspiracy and unconstitutional conduct from Longobardi.

133.    Roth further advised that Longobardi should contact his investigator to learn what the process is to reopen his psychological file.

134.    To date, Longobardi never received a letter of proposed disqualification so he could appeal it.

135.    To date, Longobardi never received any written notice indicating that he was removed from consideration for EPO Exam 4304, so he could appeal it.

136.    To date, Longobardi never received written confirmation that he was placed on psychological review, so he could appeal it.

137.    To date, Longobardi never received written confirmation that he was placed on investigative review, so he would appeal it.

138.    All of these failures constitute a denial of procedural and substantive due process of law which prohibit Longobardi from appealing these administrative decisions.

139.    The heightened scrutiny that Longobardi was subjected to by defendants constituted a denial of equal protection of law from other applicants who did not purportedly fail the psychological assessment test under a different exam application.

140.    The heightened scrutiny that Longobardi was subjected to also denied him the equal protection of law in that Longobardi was discriminated against Dr. Palmer, Director

27

Jonas, and Barreto as a former pistol license holder having purportedly failed the psychological assessment in connection with a prior exam for police officer.

141.    The heightened scrutiny that Longobardi was subjected to was also the result of Dr. Palmer's and Director Jonas' intentional, malicious anti-gun bias inflicted upon Longobardi resulting in the denial of his state and federal constitutional rights to due process and equal protection of the law, as well as the right to bear arms under the second amendment.

142.    The heightened scrutiny that Longobardi was subjected to was also intentionally and maliciously inflicted upon him in retaliation for his exercise of his right to protected speech and petition to the government to redress grievances within letters written on his behalf to defendants. See, **Exhibits 2 & 3**.

143.    In or around 2019, the list for DEP Environmental Police Officer expired.

144.    All of the above acts were committed pursuant to a continuous tort and conspiracy to deprive Longobardi of his various constitutional rights and retaliate against Longobardi for speaking out about the obvious corruption and other misconduct that took place within the above process.

**CAUSES OF ACTION**

**AS AND FOR A FIRST CAUSE OF ACTION**
**(42 U.S.C. 1983 Monell Due Process Claim - Pistol Permit)**

145.    Plaintiff repeats and realleges paragraphs "1" through "144" of the Complaint as fully set forth herein.

146.    Under the theory that the defendant City of New York, Commissioner O'Neill, Director Jonas, Dr. Palmer, and Barreto, in their official capacities, acting under color of law, are liable to the Plaintiff under *Monell* for subjecting Plaintiff to conduct that violated Plaintiff's right to procedural and substantive due process of law under the Fourteenth Amendment to the United States Constitution, pursuant to 42 U.S.C. §1983.

147.    Plaintiff's application for a pistol license was denied as a direct and proximate result of an unconstitutional rule or official policy of the NYPD License Division, on behalf of the City as regulatory agency for issuing licenses to possess and carry firearms, that denied Plaintiff fundamental procedural and substantive due process of Law.

148.    The above-described policy, custom, or practice committed by defendants Commissioner O'Neill, Director Jonas, Dr. Palmer, and Barreto violated Plaintiff's right to Due Process of Law guaranteed by the Fourteenth Amendment of the United States Constitution, enforceable through 42 U.S.C. § 1983 and was the direct, proximate cause of Plaintiff's damages.

WHEREFORE, the Plaintiff, Vincent Longobardi seeks judgment against the City of New York in the amount of Two Hundred and Fifty Thousand Dollars ($250,000.00) compensatory and punitive damages, plus attorney fees and costs pursuant to 42 U.S.C. 1988.

## AS AND FOR A SECOND CAUSE OF ACTION
### (42 U.S.C. 1983 Monell Equal Protection - Class of One - pistol permit)

29

149.    Plaintiff repeats and realleges paragraphs "1" through "148" of the Complaint as fully set forth herein.

150.    Under the theory that the defendant City of New York, Commissioner O'Neill, Director Jonas, Dr. Palmer, and Barreto, in their official capacities, acting under color of law, are liable to the Plaintiff under *Monell* for subjecting Plaintiff to conduct that violated Plaintiff's right to the Equal Protection of Law (as a Class of One), under the Fourteenth Amendment to the United States Constitution, pursuant to 42 U.S.C. §1983.

151.    Plaintiff's application for a pistol license was denied as a result of discriminatory and unequal treatment by defendants against Plaintiff, as a Class of One, through the License Division on behalf of the City as regulatory agency for issuing licenses to possess and carry firearms, that initially denied Plaintiff's application for a pistol license by applying a *per se* unconstitutional heightened scrutiny and unconstitutional rule or policy to Plaintiff because of his status as a former pistol license holder and candidate for DEP police officer who previously purportedly failed the psychological assessment to become a police officer.

152.    Plaintiff was denied a pistol permit pursuant to a rule or policy set by Barreto, acting under color of law, as Commanding Officer of the NYPD License Division, who has authority to set said rule or policy, that calls for the *per se* denial of a pistol permit by any former pistol permit holder who has purportedly failed the psychological assessment test to become a NYPD or DEP police officer.

153.    The above-described policy, custom, or practice committed by defendants Commissioner O'Neill, Director Jonas, Dr. Palmer, and Barreto violated Plaintiff's right to the Equal Protection of Law guaranteed by the Fourteenth Amendment of the United States Constitution, enforceable through 42 U.S.C. § 1983, and was the direct, proximate cause of Plaintiff's damages.

WHEREFORE, the Plaintiff, Vincent Longobardi seeks judgment against the City of New York in the amount of Two Hundred and Fifty Thousand Dollars ($250,000.00) compensatory and punitive damages, plus attorney fees and costs pursuant to 42 U.S.C. 1988.

## AS AND FOR A THIRD CAUSE OF ACTION
### (42 U.S.C. 1985(3)) Inter-Agency Conspiracy – Pistol Permit

154.    Plaintiff repeats and realleges paragraphs "1" through "153" of the Complaint as fully set forth herein.

155.    Under the theory that the defendant City of New York, Commissioner O'Neill, Barreto, and Sapienza, in their official capacities, and Director Jonas and Dr. Palmer in their individual capacities, under color of law, engaged in conduct in the furtherance of an inter-agency conspiracy between the NYPD and DEP to deny Longobardi his rights guaranteed by the Second and Fourteenth Amendments to the United States Constitution.

156.    Defendants seek to deny Plaintiff his right to keep and bear arms by denying Plaintiff, through defendants' inter-agency conspiracy to violate Plaintiff's right to the equal protection of law, as a class of one, as a former pistol permit licensee who has purportedly failed

the psychological assessment tests for police officer positions in the NYPD and/or DEP, who was applying for a subsequent pistol permit, but caused Plaintiff to be subject to an official rule or policy set by Barreto that any former pistol permit holder who has purportedly failed the Psychological Assessment test for NYPD or DEP police officer is to be denied, *per se*, without any *de novo* review of the underlying reasons for the applicant's failure of the assessment test.

157.    The above-described inter-agency conspiracy perpetrated by Commissioner O'Neill, Director Jonas, Dr. Palmer, Barreto, and Sapienza, violated Plaintiff's right to the equal protection of law guaranteed by the Fourteenth Amendment, enforceable through 42 U.S.C. § 1985(3) and was the direct, proximate cause of Plaintiff's damages.

WHEREFORE, the Plaintiff, Vincent Longobardi seeks judgment against the City of New York in the amount of Two Hundred and Fifty Thousand Dollars ($250,000.00) compensatory and punitive damages, plus attorney fees and costs pursuant to 42 U.S.C. 1988.

### AS AND FOR A FOURTH CAUSE OF ACTION
**(42 U.S.C. 1986 Failure to Prevent Inter-Agency Conspiracy Pistol Permit)**

158.    Plaintiff repeats and realleges paragraphs "1" through "157" of the Complaint as fully set forth herein.

159.    Under the theory that the defendant City of New York, Commissioner O'Neill, Director Jonas, Dr. Palmer, and Barreto, in their official capacities, acting under color of law, are liable to the Plaintiff under *Monell* for subjecting Plaintiff to conduct that violated Plaintiff's right

to the Equal Protection of Law (as a Class of One), under the Fourteenth Amendment to the United States Constitution, pursuant to 42 U.S.C. §1983.

160.    Under the theory that the defendant City of New York, Commissioner O'Neill, Barreto, and Sapienza, in their official capacities, and Director Jonas and Dr. Palmer in their individual capacities, and others, under color of law, and each having knowledge of the wrongs being done to Plaintiff, about to be done, including the denial of his Fourteenth Amendment right to Equal Protection of Law, as a class of one, resulting in the denial of Plaintiff's pistol permit through an inter-agency conspiracy between the NYPD and DEP defendants, and each defendant having the power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, which such person by reasonable diligence could have prevented.

161.    The failure of defendants to intercede, or prevent the harm caused to Plaintiff by the above inter-agency conspiracy, to deny Plaintiff his right to the equal protection of law pursuant to the Fourteenth Amendment to the United States Constitution, enforceable through 42 U.S.C. § 1986 and was the direct, proximate cause of Plaintiff's damages.

162.    Director Jonas and Dr. Palmer having engaged in extremely outrageous conduct, showed a depraved indifference to the severe emotional harm, financial damages, costs and expenses that their conduct has caused Plaintiff to suffer and was the direct and proximate result of the abhorrent conduct of Director Jonas and Dr. Palmer,.

WHEREFORE, the Plaintiff, Vincent Longobardi seeks judgment against the City of New York in the amount of Two Hundred and Fifty Thousand Dollars ($250,000.00) compensatory and punitive damages, plus attorney fees and costs pursuant to 42 U.S.C. 1988.


### AS AND FOR A FIFTH CAUSE OF ACTION
**(42 U.S.C. 1983 Monell Due Process Claim – DEP Police Officer)**

163.    Plaintiff repeats and realleges paragraphs "1" through "162" of the Complaint as fully set forth herein.

164.    Under the theory that the defendant City of New York, Commissioner O'Neill, Director Jonas, Dr. Palmer, Barreto, and Sapienza in their official capacities, acting under color of law, are liable to the Plaintiff under *Monell* for subjecting Plaintiff to conduct that violated Plaintiff's right to procedural and substantive due process of law under the Fourteenth Amendment to the United States Constitution, pursuant to 42 U.S.C. §1983.

165.    Plaintiff's application for employment as a DEP Environmental Police Officer was mysteriously denied, without written notice to Plaintiff as a result of an unconstitutional rule or official policy of the NYPD Psychological Assessment Unit, on behalf of the City as regulatory agency charged with conducting applicant screening for the DEP, that denied Plaintiff fundamental procedural and substantive due process of Law, by imposing a *per se* rule to deny applications for

candidates who were former pistol license holders who were previously purported to have failed the psychological assessment test for NYPD or DEP police officer .

166.    The above-described policy, custom, or practice committed by defendants Commissioner O'Neill, Director Jonas, Dr. Palmer, Barreto, and Sapienza violated Plaintiff's right to Due Process of Law guaranteed by the Fourteenth Amendment of the United States Constitution, enforceable through 42 U.S.C. § 1983 and was the direct, proximate cause of Plaintiff's damages.

WHEREFORE, the Plaintiff, Vincent Longobardi seeks judgment against the City of New York in the amount of Two Hundred and Fifty Thousand Dollars ($250,000.00) compensatory and punitive damages, plus attorney fees and costs pursuant to 42 U.S.C. 1988.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (42 U.S.C. 1983 Due Process Claim – DEP Police Officer)

167.    Plaintiff repeats and realleges paragraphs "1" through "166" of the Complaint as fully set forth herein.

168.    Under the theory that the defendant City of New York, Commissioner O'Neill, Director Jonas, Dr. Palmer, Barreto, and Sapienza in their official capacities, acting under color of law, are liable to the Plaintiff for subjecting Plaintiff to conduct that violated Plaintiff's right to procedural and substantive due process of law guaranteed by the Fourteenth Amendment to the United States Constitution, enforceable by 42 U.S.C. §1983.

169.    Plaintiff's application for employment as a DEP Environmental Police Officer was mysteriously denied, without written or other proper notice to Plaintiff.

170.    The official DCAS record of the status of Plaintiff's application contradicts that timing of factual events defendants engaged in.

171.    Clearly, defendants, Director Jonas and Dr. Palmer must have made false or misleading entries on official records kept by the NYPD and/or DEP.

172.    Clearly defendants Director Jonas and Dr. Palmer offered false or misleading information to Plaintiff.

173.    Clearly defendants Director Jonas and Dr. Palmer offered false instruments for filing within the NYPD and DEP.

174.    Plaintiff was also denied access to obtain his confidential files from the NYPD Psychological Assessment Unit by Plaintiff's psychologist Dr. Gregory Mack, PhD., and Plaintiff's undersigned attorney, who Plaintiff retained to assist Plaintiff in perfecting an administrative appeal of the denial of his employment application for DEP Environmental Police Officer.

175.    Plaintiff prepared the required HIPPA compliant release of records and delivered it to Director Jonas, via certified mail, yet Director Jonas denied ever receiving it.

176.    Plaintiff never received any notice of proposed disqualification, nor did Plaintiff ever receive an actual notice of disqualification that he could commence an administrative appeal from.

177.    Plaintiff never received any notice that he was placed on investigation review or psychological review which he could have used to commence an administrative appeal of those status.

178.    The above-described violation of Plaintiff's right to due process of law, committed by defendants Commissioner O'Neill, Director Jonas, Dr. Palmer, Barreto, and Sapienza violated Plaintiff's right to Due Process of Law guaranteed by the Fourteenth Amendment of the United States Constitution, enforceable through 42 U.S.C. § 1983 and was the direct, proximate cause of Plaintiff's damages.

WHEREFORE, the Plaintiff, Vincent Longobardi seeks judgment against the City of New York in the amount of Two Hundred and Fifty Thousand Dollars ($250,000.00) compensatory and punitive damages, plus attorney fees and costs pursuant to 42 U.S.C. 1988.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (42 U.S.C. 1983 First Amendment Retaliation Claim – DEP Police Officer)

179.    Plaintiff repeats and realleges paragraphs "1" through "178" of the Complaint as fully set forth herein.

180.     Under the theory that the defendant City of New York, Commissioner O'Neill, Barreto, and Sapienza in their official capacities, and Director Jonas, and Dr. Palmer in their individual capacities, acting under color of law, are liable to the Plaintiff for subjecting Plaintiff to retaliation by maliciously denying Plaintiff employment as a DEP police Officer, for which he was otherwise qualified for, in response to Plaintiff's exercise of his right to engage in protected speech,

37

as a whistleblower, by submitting letters (**Exhibits-2 & 3**) petitioning the government for a redress of grievances and exposing corruption and other matters of public concern taking place within the NYPD, in violation of Plaintiff's rights under the First and Fourteenth Amendment to the United States Constitution, pursuant to 42 U.S.C. §1983.

181.    Director Jonas and Dr. Palmer having engaged in extremely outrageous conduct, showing a depraved indifference to the severe emotional harm, financial damages, costs and expenses that their conduct has caused Plaintiff which was suffered as a direct and proximate result of the abhorrent conduct of Director Jonas and Dr. Palmer, that they be held for compensatory and punitive damages, interest, costs and expenses awarded to Plaintiff, as well as legal fees pursuant to 42 U.S.C. 1988.

182.    The above-described Free Speech, whistleblower, retaliation claim committed by defendants Commissioner O'Neill, Barreto, and Sapienza in their official capacities, and Director Jonas, and Dr. Palmer in their individual capacities, violated Plaintiff's rights guaranteed by the First and Fourteenth Amendment of the United States Constitution, enforceable through 42 U.S.C. § 1983 and was the direct, proximate cause of Plaintiff's damages.

WHEREFORE, the Plaintiff, Vincent Longobardi seeks judgment against the City of New York in the amount of Two Hundred and Fifty Thousand Dollars ($250,000.00) compensatory and punitive damages, plus attorney fees and costs pursuant to 42 U.S.C. 1988.

## AS AND FOR AN EIGHTH CAUSE OF ACTION:
### (Negligent Infliction of Emotional Distress)

183.    Plaintiff repeats and realleges paragraphs "1" through "182" of the Complaint as fully set forth herein.

184.    That each and all of the defendants herein had a duty of care to the Plaintiff; that said duty was breached by the defendants; that said breach resulted the direct and proximate cause of harm to Plaintiff.

185.    That defendants, through extreme, outrageous, negligent and reckless behavior, caused severe emotional distress, mental trauma, and financial loss to the Plaintiff; that defendants engaged in extreme and outrageous conduct; negligently causing, or negligently disregarding a substantial probability of causing, severe emotional distress; and there lies a causal connection between the conduct and injury; and resulting severe emotional distress.

186.    That Defendants' actions go beyond all possible bound of decency and is regarded as atrocious and utterly intolerable in a civilized community.

187.    That the acts of Defendants described herein constitute a negligent infliction of emotional distress against the Plaintiff, and the Plaintiff has suffered damages pursuant thereto, and he will continue to suffer same in the future.

WHEREFORE, the Plaintiff, Vincent Longobardi seeks judgment against the City of New York in the amount of Two Hundred and Fifty Thousand Dollars ($250,000.00)

compensatory and punitive damages, plus attorney fees and costs pursuant to 42

U.S.C. 1988.

Dated: Nassau, New York
       March 30, 2021

                                    Respectfully,

                                    By:
                                    Joseph W. Murray, Esq.
                                    *Attorney for Plaintiff Vincent Longobardi*
                                    185 Great Neck Road, Suite 461
                                    Great Neck, New York 11021
                                    Cell Phone: (718) 514-3855
                                    Office Phone (646) 838-1702
                                    Email: joe@jmurray-law.com

40